## ORIGINAL

1

PRO-SE

2
Shirley Pico, TRUSTEE for Manuel Tabaquin
94-858 Kaaholo Street,

3
Waipahu, HI 96797
(808) 676-4693

4
(808) 372-7457

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 06 2010

at ___ o'clock and __05__ min __ M.
SUE BEITIA, CLERK

5

6

## UNITED STATES DISTRICT COURT

7

### For the

8

### DISTRICT OF HAWAII

9

10

11

Shirley Pico, TRUSTEE for Manuel Tabaquin,, an individual, an individual,

12

Plaintiffs,

13

14

v.

15

BANK OF AMERICA, Business Entity, COUNTRYWIDE HOME LOANS, INC., a

16
Business Entity, form unknown; JACQUELINE TRONG ASING, Wife of KRISTIAN LOUIS ASING

17
DBA/ INFINITY MORTGAGE CO. , a Business

18
Entity, FIRST AMERICAN TITLE CO., a Business entity MORTGAGE ELECTRONIC

19
REGISTRATION SYSTEMS, a Business Entity, form unknown; and DOES 1-100 inclusive,

20

21

Defendants.

Case No. CV 10 00583 SOM KSC

**COMPLAINT** FOR:

1. DECLARATORY RELIEF;
2. INJUNCTIVE RELEIF;
3. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING;
4. VIOLATIONS OF TILA;
5. VIOLATIONS OF RESPA;
6. RECISSION;
7. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP);
8. BREACH OF FIDUCIARY DUTY;
9. UNCONSCIONABILITY;
10. PREDATORY LENDING;
11.  QUIET TITLE
12. LACK OF STANDING (MERS);
Exhibit "A"
**Jury Trial Demanded**

22

23

## INTRODUCTION

24

COMES NOW the Plaintiff Shirley Pico, Trustee for Manuel Tabaquin,

25

(hereinafter referred to as "Plaintiffs" or "Borrowers"), allege as follows:

26

27

28

## PARTIES

1.      At all times relevant herein, Plaintiffs were over the age of eighteen and is and were a Residents of the Honolulu, State of Hawaii.

2.      The real estate that is the subject of this litigation is 94-858 Kaaholo Street, Waipahu, HI 96797,   (hereinafter referred to as "Subject Property").

Plaintiffs purportedly entered into a loan repayment and security agreement on or about,  with Defendant then transferred to Defendant COUNTRYWIDE HOME LOANS, INC. (hereinafter referred to as "COUNTRYWIDE"), which now "BANK of AMERICA", which required Plaintiffs to repay the loan of $360,000.00 to FLAGSTAR BANK, FSB, then automatically transferred to COUNTRYWIDE.  The loan is 30 years fixed rate, with an interest rate of 5.754% for the life of the loan, required payment of $2,044.040. The loan was a refinance transaction with "Jacqueline Taong Asing, Wife of Kristian Louis Asing DBA Infinity Mortgage Company.

3.   " In this transaction, Infinity Mortgage Co. acted as a Table under/Correspondent Lender in which the Note and Deed was made in Infinity's Name and then immediately sold off to Flagstar Bank FSB. As demonstrated in the file documents, Flagstar was involved in the underwriting process, and approved the loan. Infinity functioned both as corresponding lender and Broker to Flagstar Bank. The loan amount for this loan was $360,000, 72% of the property's Appraised value ($500k) at the time.

The loan is a 30 year fixed interest rate loan. The interest rate is 5.50%. The payment, principal and interest is $2,044.04 per month. By 2009, the servicing of the loan was transferred to Bank of America FKA Countrywide Home Loans. The borrower has been served with notices of foreclosure from the servicer and or their attorneys, but later cancelled it.

4.   Plaintiffs are informed and therefore allege that Defendant COUNTRYWIDE, a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii.   FLAGSTAR MORTGAGE   of 5151 Dorporate Dr. Troy, MI 48098 was the original mortgage lender which the broker was Jacqueline Trong Asing, wife of Kristian Louis Asing dba INFINITY MORTGAGE CO of 46-028 Kawa st. Ste# A-6, Kaneohe, HI 96744.

5.   Plaintiffs are informed and therefore allege that Defendant, FIRST AMERICAN TITLE, CO., ESCROW from Hawaii, whose address was 333 Queen Street, Ste#700, Honolulu, HI 96813, is a corporation, authorized to do business in the State of Hawaii.

6.   Plaintiffs are informed and therefore allege that Defendant Infinity Mortgage Co., a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii.

7.   Plaintiffs are informed and therefore believe that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (hereinafter referred to as "MERS"), a Business Entity, form unknown, is a corporation, authorized to do business in the State of Hawaii.  MERS is the original mortgage nominee/beneficiary on the loan, with a business address of, P.O. Box 2026, Flint, MI 48051.

8.   The Defendants (each of them named in paragraphs 1 through 7 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 100 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to

Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property.  Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged.  Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

9.     Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned herein, the UNKNOWN DEFENDANTS are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint.  Plaintiffs are informed and therefore allege that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

10.     Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

11.     Defendants, and each of them, failed to provide the requisite Federal forms and disclosures including but not limited to the Truth In Lending Act, Equal Opportunity Credit Act, Fair Lending/Fair Debt Collection Act as well as others.

12.     It is also the responsibility of the lender and brokers to verify that the borrower has the ability to repay the credit that has been extended. A departure from the fundamental principles of loan underwriting will form the basis of abusive lending.  Lending without a determination that a borrower can reasonably be expected to repay the loan from resources other than the collateral

securing the loan, and relying instead on the foreclosure value of the borrower's collateral to recover principal, interest and fees. The underwriting on this loan was severely flawed. There was no determination of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

13. As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j]; [24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; 24 Code of Federal Regulations § 3500.10; § 10241.3; Unfair and Deceptive Business Practices and Acts [UDAP Statutes]; among others.

## JURISDICTION

14.    The transactions and events which are the subject matter of this Complaint all occurred within County of Honolulu, State of Hawaii.

15.    The Subject Property, is located within the County of Honolulu, State of Hawaii.

## FACTUAL ALLEGATIONS

16.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

17.    For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home. Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure. The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization

payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics. All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America. Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

18. The loan product sold to Plaintiffs in this case was exactly the kind of loan that has contributed to our national problem. The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk. They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities who placed them in this position.

19. On or about November 16, 2004 (hereinafter referred to as "Closing Date") Plaintiffs allegedly entered into a consumer credit transaction with Flagstar Bank FSB, then transferred it to COUNTRYWIDE by obtaining a $$360,000.00 mortgage loan, secured by Plaintiff's principal residence, (Subject Property). These notes were allegedly secured by a First Trust Deed on the Property in favor of COUNTRYWIDE.

20. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under loan agreement, including COUNTRYWIDE, Old Republic Title & Escrow of Hawaii, Ltd., MERS and UNKNOWN DEFENDANTS (hereinafter

referred to collectively as "Defendants") failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within.  As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

21. The terms of the finance transaction with COUNTRYWIDE are not clear or conspicuous, nor consistent, and are illegal, and include, for example, extremely high ratios with respect to Plaintiff's Income and Liabilities. Plaintiffs were given a loan that was an inappropriate loan. The loan was more expensive in terms of fees, charges and or interest rates than alternative financing for which Plaintiffs could have qualified.  The terms of the loan given to Plaintiffs are such that they can never realistically repay the loan.

22. The fees for this loan were equally egregious.  The points and fees FLAGSTAR BANK, FSB (Lender) paid to COUNTRYWIDE (as broker) were excessive at 2.82% of the loan amount. This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

23. Using the lower initial rate to qualify the borrowers was an attempt to insure that the debt ratio of the borrowers would fit into the investor product guidelines. However, the debt ratio for the borrowers at the time of this transaction was 64.1%, far exceeding normal underwriting practices of a 28/36% debt-to-income ratio. Not using the worst-case scenario to qualify the borrowers insures that the borrowers will experience extreme payment shock because the income of the borrowers in most cases will not increase at the same rate of the new adjusted payment. The Federal Truth in Lending Statement predicts that the payment decreases after the initial 3 years' time and furthermore, over the life of the loan.

24. The loan documents present a "picture" of the loan whereby the loan payment gradually

decreases over a 30 year period; . If FLAGSTAR BANK, FSB (as original lender) had presented this loan with complete details, it is highly unlikely the borrowers would have signed the loan papers and put themselves at such high risk.

25. Under the EOCA, a borrower is entitled to the same terms of credit issuance that another borrower of equal characteristics is entitled to. Here, FLAGSTAR BANK, FSB, transferred to COUNTRYWIDE, KNOWN now "BANK of AMERICA" placed Plaintiffs into a loan that had a significantly higher interest rate than what was qualified for.

26.    These acts of deception violate several statutes and is in essence creates an illegal loan. Further, this loan was underwritten without proper due diligence by FLAGSTAR BANK, FSB, COUNTRYWIDE, and BANK of AMERICA as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T which would have provided past borrower tax returns nor verify income or employment.

27.    In addition, and unbeknownst to Plaintiffs, FLAGSTAR BANK, FSB, COUNTRYWIDE and BANK OF AMERICA illegally, deceptively and/or otherwise unjustly, qualified Plaintiffs for a loan which FLAGSTAR BANK, FSB knew or should have known that Plaintiffs could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only. Had FLAGSTAR BANK, FSB used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining the debt to income ratio, Plaintiffs would not have qualified for the loan in the first place. Consequently, FLAGSTAR BANK, FSB sold Plaintiffs a loan product that it knew or should have known would never be able to be fully paid back by Plaintiffs. FLAGSTAR BANK, FSB ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiffs a deceptive loan product.

28. There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

29. Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

30. This loan was a "stated income" loan wherein neither FLAGSTAR BANK, FSB, COUNTRYWIDE, BANK OF AMERICA, and FIRST AMERICAN TITLE CO. Escrow of Hawaii, MERS were able to accurately or reasonably determine if the Plaintiffs could qualify for the home loan.  This lack of diligence is the primary reason Plaintiffs find themselves in the position they do.  The Defendants herein were aware of this probable outcome. The Plaintiffs were not.

31. The Defendant's utilized excessive closing costs/fees that are actionable for treble damages pursuant to 12 U.S.C. §2607.

32. The purpose of entering into the above-described mortgage loan transactions was for Plaintiffs to eventually own the Subject Property.  That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

33. An expert, certified, forensic audit of the Plaintiff's loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiff's loan:

34. Plaintiffs are informed and believe and therefore allege that the underwriter approved

this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiffs should have been declined for this loan.

35. Plaintiffs are informed and believe and therefore allege that based on a Real Income Analysis, with the type of take home income Plaintiffs possess and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

36. Plaintiffs are informed and believe and therefore allege that Defendants failed to provide Plaintiffs with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiffs.

37. Plaintiffs are informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiffs because they knew or should have known that the Plaintiffs would or had a strong likelihood of defaulting on this loan, they have a fiduciary duty to the Plaintiffs to not place them in that loan (in harms way).

38. Plaintiffs are informed and believe and therefore allege that it was in the FLAGSTAR BANK, FSB interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Plaintiffs financial position or livelihood.

39. Plaintiffs are informed and believe and therefore alleges that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

40. Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

41. Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of the Unfair and Deceptive Acts and Practices statutes.

## COUNT I

### Declaratory Relief

### (Against All Defendants)

42. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

43. An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies. Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

44. Plaintiffs request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws

designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants.  Plaintiffs further request that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation

45.    As a result of the Defendants' actions, Plaintiffs have suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

46.    Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT II

### Injunctive Relief

### (Against All Defendants)

47.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

48.    Defendants have commenced a foreclosure action under the Note and have scheduled a non-judicial sale. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique.

49. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the property and will lose his home

50. Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is

restrained and enjoined because real property is inherently unique and it is and will be impossible for

Plaintiffs to determine the precise amount of damage Plaintiffs will suffer.

WHEREFORE, Plaintiffs pray for relief as set forth below.

# COUNT III

## Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

51. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

52.     Every contract imposes upon each party a duty of good faith and fair dealing in its

performance and its enforcement.  This implied covenant of good faith and fair dealing requires that

no party will do anything that will have the effect of impairing, destroying, or injuring the rights of

the other party to receive the benefits of their agreement.  The covenant implies that in all contracts

each party will do all things reasonably contemplated by the terms of the contract to accomplish its

purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated

when they entered into the agreement.

53. The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in

this matter.

54. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs

during the events alleged in this Complaint.  Defendants were required to exercise such power in

good faith.

55. Defendants willfully breached their implied covenant of good faith and fair dealing with

Plaintiffs when Defendants:

I.   Willfully withheld numerous disclosures;

II. Willfully withheld notices in regard to excessive fees and closing costs; below standard and non-diligent underwriting standards, Good Faith Estimates, Closing Costs and Fees, Disclosures of additional income due to interest rate increases, and failure to disclose when negative credit scores were disseminated; and failure to provide disclosures of business affiliations, kickback fees, and Rescission/Right to Cancel Disclosures;

III. Willfully placed Plaintiffs in a loan that he did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

56. As a result of Defendants' breach of this covenant, Plaintiffs have suffered injury and have caused Plaintiffs the threat of loss of their home. Plaintiffs have incurred and continue to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

57. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT IV

### Violation of TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

58. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

59. The Truth In Lending Act (TILA) applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a

finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

60.     DEFENDANTS failed to issue TILA initial disclosures as mandated. The failure to provide these disclosures would ensure that the Plaintiffs had no idea what the loan they were being offered, or the details of the loan. The Plaintiffs would then be place in a serious disadvantage as to getting a loan beneficial to their interest.

61.     DEFENDANTS failed to provide Plaintiffs with a correct payment schedule, a properly disclosed interest rate, an accurate Good Faith Estimate or a disclosure relating to Property/Hazard Insurance, all required under the Code of Federal Regulations.

62.     Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

63. Per 12 CFR § 226.19(b), First Magnus was required to provide the Plaintiffs with the CHARM  booklet. There is no evidence in the file supporting the fact that such was received which is a violation of the TILA laws.

64. DEFENDANTS was further required to fully disclose the terms of the financing to the Plaintiffs and again, there is no evidence to support such disclosure was provided to the Plaintiffs. In this case, with such a volatile loan, the Plaintiffs should have been fully counseled on the terms and the how such affected the property. Further, no disclosures were provided that advised of DEFENDANT'S dual role as lender and broker.

65. An actual controversy now exists between Plaintiffs, who contends they have the  right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

66. As a direct and proximate result of Defendants' violations Plaintiffs have incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

67. Defendants were unjustly enriched at the expense of Plaintiffs who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

68. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT V

### Violation of Real Estate Settlement and Procedures Act (RESPA)

### (Against All Defendants)

69. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

70. RESPA applies because a lender that regularly extends federally related mortgage loans aggregating more than $1 million per year, and intended for the purchase of a one- to four-family residential property are subject to RESPA per 12 U.S.C. §§ 2601-2617.

71. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

73.     In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

74. The fees for this loan were equally egregious.  First Magnus was paid over 2.5% of the loan amount in fees. This loan required the Plaintiffs to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

75. Within this loan existed, as well as a "Process $360,000.00 FLAGSTAR BANK, FSB (as LENDER) were excessive at 2.82% of the loan amount.

76. Defendants, and each of them, did give, provide or receive a hidden fee or thing of value for the referral of  settlement business, including but not limited to, kickbacks, hidden referral fees, and/or Yield Spread Premiums. This is a violation under RESPA of *24 C.F.R. § 3500.14.*

77. As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT VI

### Rescission

### (Against All Defendants)

78. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

79.  Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA

Violations; 2) RESPA; 3) Fraudulent Concealment; 4) Deceptive Acts and Practices (UDAP) and 5)

Public Policy Grounds, each of which provides independent grounds for relief.

80.   The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind

a loan to three years from the date of closing if the borrower received false or incomplete disclosures

of either the loans terms or Plaintiff's right to rescind.   Here, Defendants have failed to properly

disclose the details of the loan.   Specifically, the initial disclosures do not initial TIL disclosures, and

lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiffs in

a loan he could not afford and would ultimately benefit Defendants following the negative

amortization that accrued.

81.   The public interest would be prejudiced by permitting the alleged contract to stand;

Such action would regard an unscrupulous lender.

82.      As a proximate result of Defendants' actions, Plaintiffs have been damaged in an

amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for rescission of the stated loan in its entirety.

## COUNT VII

### Unfair And Deceptive Business Act Practices (UDAP)

### (Against All Defendants)

83. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

84. Defendants failed to undergo a diligent underwriting process for this loan a alleged in

this complaint.   They also failed to properly adjust and disclose facts and circumstances relating to

Plaintiff's mortgage loan and placed Plaintiffs in a loan, by way of stated income and misleading

facts, which they should never have been approved for because they could not afford it.   Defendants

did have that knowledge of these facts, circumstances and risks but failed to disclose them. Defendants also used various rates and charges to disguise the actual payment schedule and loaned amount.  The Defendants enjoyed unjust enrichment and have profited and deceptively preyed upon Plaintiffs and their naïve nature in the industry.

85. Defendant's intentionally concealed business affiliates and rushed the closing to procure the loan without Plaintiff's potential rescission.

86. By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, said Defendant has violated the Unfair and Deceptive Acts and Practices by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of her home, equity, as well as her past and future investment.

87. By reason of the foregoing, Plaintiffs have suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT VIII

### Breach of Fiduciary Duty

### (Against Defendants)

88.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89.     Defendants owed a fiduciary duty to Plaintiffs and breached that duty by ailing to advise or notify Plaintiffs when Defendant's broker knew or should have known that Plaintiffs would or had a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

90.    Defendants have a fiduciary duty to the Plaintiffs, however here, they exercised a greater level of loyalty to each other by providing each other with financial advantages under the loan without disclosing their relation to one another to Plaintiffs.

91.    Defendant failed to provide material disclosures regarding the loan and its interest rate to Plaintiffs while in the capacity of Plaintiff's Lender.

92.    Defendants failed to fully comply with TILA and RESPA regulations and laws designated to protect Plaintiffs. The failure to do so placed Plaintiffs in a serious disadvantage and potential loss of their home.   Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT IX

### Unconscionability – UCC-2-3202

### (Against All Defendants)

93. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

94. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

95. When it is claimed or appears to the court that the contract or any clause thereof may be

unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

96. Here, based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## COUNT X

### Predatory Lending

### (Against All Defendants)

97. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

98.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices.

99.    Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

100.    This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan;

101.    The loan does not does not plainly and prominently disclose on the good faith estimate of closing costs.  Further, Plaintiffs were not advised of business affiliations among defendants nor were they advised of the fees charged.

102.    This loan targets inappropriate or excessively expensive credit products to older (non-English speaking) borrowers, to persons who are not financially sophisticated or who may be otherwise vulnerable to abusive practices, and to persons who could qualify for mainstream credit products and terms.

103.    This loan does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium paid directly or indirectly, in whole or in part, to a mortgage loan officer.

104.    This loan targeted persons who don't speak or read English well and all the conversations are held in either English or their native language. Borrowers cannot understand the loan documents and have no idea what they are signing.

105.    This loan requires borrowers to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

106. Defendants utilized the practice of approving loans with high debt ratios, usually 50% or more, without determining the true ability of the borrower to repay the loan. This can often be seen with Prime borrowers approved through the Automated Underwriting Systems.

107.    This loan is marketed in a way that fails to fully disclose all material terms. Includes any terms or provisions which are unfair, fraudulent or unconscionable. It is marketed in whole or in

part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact. Includes interest only loans, adjustable rate loans, negative amortization and HOEPA loans.

108.   This loan is based on a loan application that is inappropriate for the borrower. For instance, the use of a stated-income loan application from an employed individual who has or can obtain pay stubs, W-2 forms and tax returns.

109.   This loan is underwritten without due diligence by the party originating the loan. No realistic means test for determining the ability to repay the loan. Lack of documentation of income or assets, job verification. Usually with Stated Income or No documentation loans, but can apply to full documentation loans.

110.   This loan is underwritten without due diligence by the party originating the loan. There has been no realistic means test for determining the ability of the borrowers to repay the loan. Further, there is a lack of documentation of income or assets and/or job verification.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT XI

## Quiet Title

## (All Defendants Claiming Any Interest In the Subject Property)

111. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

112. Plaintiffs are at all times herein mentioned the owner and/or entitled to possession of the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser..

113.   Plaintiffs are informed and therefore believes and thereupon alleges that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs.  However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

114.Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in Plaintiff's alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT XII

### Lack of Standing; Improper Fictitious Entity

### (Against Defendant MERS)

115.Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.   Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

117.   Mortgage Electronic Registration System (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of

mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the same time, assist DEFENDANTS in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved DEFENDANTS money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

118.    MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

119.    Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal. The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absences of the assignment and physical delivery of the note will result in a nullity.

120.    It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note.

121.    The existence of MERS indicated numerous violations of the Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices were intentionally designed to mislead the borrower and benefit the lenders.

122.    One can only conclude after a reading of this section, that MERS has no legal standing to foreclose.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1. For Compensatory Damages in an amount to be determined by proof at trial.

2. For Special Damages in an amount to be determined by proof at trial.

3. For General Damages in an amount to be determined by proof at trial.

4. For Treble Damages in an amount to be determined by proof at trial.

5. For Punitive Damages as against the individual Defendants.

6. For Attorney's Fees and Costs of this action.

7. For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8. For an Injunction, enjoining any foreclosure proceeding on the Subject Property.

9. For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. For a judgment ordering that the Defendants provide proof of authority to foreclose by producing the promissory note.

11. Quiet Title.

12. For any prejudgment or other interest according to law.

13. Any other and further relief that the Court considers just and proper.

OCTOBER 6, 2010

_Shirley Pico Pico_

PRO-SE
SHIRLEY PICO- TRUSTEE
for Manuel Tabaquin